## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| Kevin Smith, # 164920, a/k/a Bar-None Royal Blackness, ) ) ) | |
| Plaintiff, ) ) | C.A. No.: 9:07-cv-03644-PMD-BM |
| v. ) ) ) | **ORDER** |
| Esther Quattlebaum; Jon E. Ozmint; Robert E. Ward; James E. Sligh; John Lunden; David Tatarski; Dennis Dunlap; J.C. Brown; Bernard McKie; Vaugh Jackson; Gary Lane; Charles Amaker; Robert Espisito; H. Boatman; J. Peck; Veronica Smith; Denise Cannarella; Glen Alewine; RN Brett; William Litrell; Ned Cooper; Larry Kong, of American Amenities, Inc.; AEDEC International Inc.; and Henry McMaster, In Their Official/Individual Capacity ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. ) ) | |

This matter is before the Court upon the recommendation of United States Magistrate Judge Bristow Marchant that Defendants' Motion for Summary Judgment be granted, and that the case be dismissed with prejudice. The record contains a Report and Recommendation ("R&R") from the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.02(B)(2)(d) and (e), D.S.C.[1] According to 28 U.S.C. § 636(b)(1), a dissatisfied party may object, in writing, to an R&R within ten days after being served with a copy of the report. Plaintiff Kevin Smith, a/k/a Bar-None Royal

---

[1] The Magistrate Judge is authorized to review all pretrial proceedings involving litigation by individuals proceeding *pro se*, according to the provisions of 28 U.S.C. § 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., and to submit all findings and recommendations to this Court for review.

Blackness ("Plaintiff"), filed a timely objection in response to the R&R. For the reasons set forth herein, Defendants' Motion for Summary Judgment is granted, and Plaintiff's Motion for Summary Judgment is denied.

## BACKGROUND

Plaintiff is currently confined in the maximum security unit of Kirkland Correctional Institution (KCI). Plaintiff's original forty-nine page complaint, seeking relief pursuant to 42 U.S.C. § 1983, contained a number of claims relating to the conditions of his confinement in the maximum security unit at KCI. However, due to his "struck-out" status, Plaintiff is only allowed to pursue certain claims in this action. The only claims relevant to the matter at hand are Plaintiff's allegations that: (1) the South Carolina Department of Corrections (SCDC) gave prisoners hygiene products made in China that contained toxic chemicals found in anti-freeze; (2) lights kept on for twenty-four hours and noise created by mentally-ill inmates led to sleep deprivation; (3) mold covered the hallways and Plaintiff's cell area; and (4) the maximum security unit at KCI contained no access to sunlight.

Defendants Larry Kong and American Amenities, Inc. have been dismissed as party defendants in this case by an Order filed March 12, 2009 because they are not government actors, and therefore are not subject to suit under § 1983. American Amenities, Inc. is the American distributor of hygiene products, imported from China, that Plaintiff alleges he and other inmates have used in KCI. Defendant Larry Kong serves as CEO of American Amenities.

With respect to the surviving claims, Plaintiff first alleges that Defendants have shown deliberate indifference toward his health and safety by distributing contaminated hygiene products imported from China. Plaintiff claims that "Spring Fresh" toothpaste and deodorant contained

2

poisonous chemicals used in antifreeze, and that he informed Defendant Ward and Defendant Lundon of this issue through request forms submitted in June and July 2007. Plaintiff alleges that Defendant Peck knew of the contaminated products, but that he continued to distribute them through the prison commissary. Furthermore, Plaintiff claims he received medical treatment for rashes and swelling on his body, as well as for a swollen tongue, on July 17, 2007, and that the contaminated "Spring Fresh" toothpaste and deodorant caused these medical issues to occur.

Secondly, Plaintiff asserts that his severe sleep deprivation has resulted from being kept in a controlled strip cell illuminated twenty-four hours per day. Defendant Jackson ordered Plaintiff to be housed in the illuminated cell for five months after Plaintiff was involved in a physical altercation with a corrections officer. Plaintiff alleges that the lighted room interferes with his sleep cycle. In addition, Plaintiff claims that the constant screaming and banging of mentally ill prisoners has contributed to his sleep deprivation.

Plaintiff also claims that the hallways of the prison's maximum security unit serve as a serious health hazard because they contain mold. Prisoners are at risk of harm because their meal trays come through the hallways, and therefore are exposed to bacteria and mold, Plaintiff claims. Furthermore, Plaintiff asserts that his individual cell contains mold, peeling paint and asbestos.

Finally, Plaintiff alleges he is being deprived of sunlight inside his cell because steel plates welded to each cell are blocking small windows, and this lack of sunlight has led to his mental and physical deterioration.

Plaintiff alleges that Defendants Ozmint, Ward, McKie, Alewine, Lane and others are responsible for these conditions. He seeks declaratory and/or injunctive relief, as well as monetary damages. Defendants have filed a Motion for Summary Judgment, asserting that they are not subject

3

to suit under § 1983. Defendants claim Plaintiff's assertions are baseless because: (1) no F.D.A. advisory has ever listed "Spring Fresh" toothpaste as containing any level of contamination; (2) Plaintiff has not offered evidence that he suffered injuries caused by any of the chemicals allegedly found in the toothpaste and deodorant; (3) no medical examination has shown that Plaintiff has difficulty sleeping due to noise from other inmates or the illuminated cell; (4) no inspection of the maximum security unit has uncovered an unacceptable level of mold; and (5) Plaintiff has access to sunlight for up to one hour each day during outdoor recreational area time. This Motion was filed on November 20, 2008. Plaintiff filed a Response in Opposition to Defendants' Motion on December 22, 2008 and filed a Motion for Summary Judgment of his own.

On April 10, 2009, the Magistrate Judge recommended that this Court grant Defendants' Motion for Summary Judgment, and deny Plaintiff's Motion for Summary Judgment, on the grounds that Plaintiff has failed to present any evidence to substantiate his claims regarding the contamination of his toothpaste and deodorant, the deterioration of his health from alleged sleep deprivation, the existence of unacceptable levels of mold, or his assertions about being denied access to sunlight. Therefore, Defendants could not be held liable under § 1983. Plaintiff filed an Objection to the Magistrate Judge's R&R on April 24.

## STANDARD OF REVIEW

### I. Magistrate Judge's Report and Recommendation

Magistrate Judges are empowered by statute to preside over pretrial matters on appointment by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Federal Rule of Civil Procedure 72(b) states that when, as here, a Magistrate Judge is "assigned without consent of the parties to hear a pretrial matter dispositive of a claim or defense of a party, or a prisoner petition challenging the

conditions of confinement . . .[t]he magistrate judge shall enter into the record a recommendation for disposition of the matter." The recommendation has no presumptive weight, and the responsibility for making a final decision remains with the court. *Mathews v. Weber*, 423 U.S. 261, 269 (1976).

Under Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1), a District Court evaluating a Magistrate Judge's recommendation can adopt those portions to which no "specific, written objection" is made as long as those sections are not clearly erroneous. *Thomas v. Arn*, 474 U.S. 140, 149 (1985). When a party makes a specific, written objection within ten days of being served with a copy of the Magistrate Judge's report, the district court is required to make a de novo determination regarding the parts of the report objected to by the party. The court may accept, reject or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter with instructions. 28 U.S.C. § 636(b)(1). The Court has reviewed the entire record, the R&R and Plaintiff's Objections. The Magistrate Judge fairly and accurately summarized the facts in this case and this Court incorporates the R&R's recitation of the facts by specific reference.

**II.     Summary Judgment**

To grant a party's motion for summary judgment, the Court must find that there is no "genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The Court must not weigh the evidence, instead, the Court must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). Disposition by summary judgment is appropriate when the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. *Teamsters Joint Council No. 83 v. Centra,*

5

*Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)). Summary judgment is an important mechanism for examining "claims and defenses [that] have no factual bases" and is not a "disfavored procedural shortcut." *Celotex*, 477 U.S. at 327.

## **ANALYSIS**

Section 1983 authorizes lawsuits for monetary damages or injunctive relief against those acting under the color of state law who violate a citizen's constitutional rights. Inmates such as Plaintiff may seek relief under this statute if the conditions of their confinement are so severe that they violate the inmate's constitutional rights.

The Magistrate Judge recommended that this Court grant Defendants' Motion for Summary Judgment, and deny Plaintiff's Motion for Summary Judgment, on the grounds that Plaintiff has failed to present any evidence to substantiate his claims. Plaintiff has filed a timely written objection to the Magistrate Judge's R&R. However, the written objection must specifically identify the portions of the R&R to which objections are made, as well as the basis for such objections. In his objection, however, the Plaintiff simply restates many of the allegations contained in his original Complaint. Only in a few instances does the Plaintiff identify specific alleged failures of the R&R. This Court will examine the few specific objections provided by the Plaintiff, but with regard to all

6

other allegations that do not specifically object to the Magistrate Judge's R&R and simply serve as a restatement of earlier complaints already addressed, has reviewed the R&R and determined that it was not clearly erroneous in its application of the law to the facts of Plaintiff's case.

## I. Hygiene Products Claims

The Magistrate Judge's R&R found that no genuine issue of fact was presented as to whether Plaintiff's constitutional rights were violated concerning the distribution of "Spring Fresh" toothpaste and deodorant. The Magistrate Judge found that the Plaintiff provided no evidence to show that the hygiene products at issue contained dangerous amounts of any chemical, and that after Plaintiff complained about these products, the SCDC took affirmative steps to determine if the hygiene products posed a danger. Because Plaintiff must show not only that the deprivation alleged was "objectively significantly serious," but also that Defendants acted with a "sufficiently culpable state of mind" to prove a violation of constitutional rights, the Magistrate Judge reasoned that Plaintiff had failed to present any such evidence. *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995).

In his objection to the R&R, Plaintiff claims that the Magistrate Judge erred because the Plaintiff has produced evidence that the hygiene products at issue contained chemicals which are used in anti-freeze. Although the company that manufactured the products, American Amenities, did disclose that an unknown number of tubes of Chinese-manufactured toothpaste were contaminated, Plaintiff offers no evidence in his pleadings that the actual toothpaste and deodorant used by inmates at KCI contained any amount of contamination. Plaintiff also continues to misread a F.D.A. advisory about the hygiene products from China. The advisory cautioned that possible contamination existed in the tubes made in China, but never stated that all hygiene products made in China must automatically be discarded. Moreover, Plaintiff never offers admissible factual

7

evidence that the "Spring Fresh" brand contained any level of contamination. In fact, evidence in the record shows that SCDC officials contacted American Amenities and received verification that "Spring Fresh" was not listed as one of the brands affected by the advisory. Therefore, the decision to continue offering "Spring Fresh" products in limited amounts to the inmates prior to the discontinuation of the product did not violate any F.D.A. regulation because the advisory did not mandate any such action.

Moreover, Plaintiff never produces any evidence that Defendants were deliberately indifferent to the potential danger posed by the hygiene products from China, as is required to prove a constitutional rights violation. Instead of acting with a "culpable state of mind," Defendants contacted the manufacturing company in question to determine if the products represented a danger to inmates' health. After considering the issue, even after discovering no evidence of any contamination, SCDC officials decided to replace "Spring Fresh" toothpaste with "Nature Mint" toothpaste from India. Therefore, there is no proof that Defendants pushed to keep using "Spring fresh" products as a means of depriving inmates of their rights. Instead, the record shows that Defendants worked to address the problem as soon as it was brought to their attention, even though no evidence had been presented that the products used at KCI contained any toxic chemicals.

In his objection, Plaintiff also repeats assertions that he has suffered medical ailments such as bleeding gums, a tingling sensation in his tongue, a swollen jaw, back pain and a skin rash from using the toothpaste and deodorant. The Magistrate Judge concluded that Plaintiff failed to offer any evidence that these injuries were proximately caused by any of the products in question. Plaintiff claims that the Magistrate Judge erred, and cited a Fourth Circuit case from 1991, where the court found that a prisoner's personal knowledge of the facts could be admissible and relevant

8

as evidence. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). However, Plaintiff draws an incorrect comparison between the facts of *Williams*, where the prisoner wanted to testify about conditions visible without specific training, such as prison overcrowding, and this case, where medical and health ailments generally diagnosed by trained doctors and not inmates themselves are at issue. Although Plaintiff has shown that he visited health services and received medical treatment for these injuries, he has not produced any evidence that exposure to "Spring fresh" toothpaste and deodorant caused the ailments, especially because there is no evidence that those hygiene products contained the toxic chemicals in the first place.

Accordingly, this Court accepts Judge Marchant's R&R as pertaining to Plaintiff's claims arising out of Defendants' use and distribution of "Spring Fresh" hygiene products and grants summary judgment to the Defendants.

## II.  Sleep Deprivation Claims

The Magistrate Judge's R&R also found that Plaintiff failed to provide any specifics or evidence to support the claim that noise levels in the maximum security unit, as well as cell illumination, violated his constitutional rights. In his objection to this finding, Plaintiff again misconstrues the factual background of a different case. Plaintiff argues that the Magistrate Judge misapplied the holding in *Strickler*, where the Fourth Circuit found that a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions to withstand summary judgment on a challenge to prison conditions. *Strickler v. Waters*, 989 F.2d 1375, 1379, 1381 (4th Cir. 1993), *cert. denied*, 510 U.S. 949 (1993). The Magistrate Judge recommended that because no evidence had been presented showing that loud noise at night or an illuminated cell caused Plaintiff's medical problems, he has not established an issue of material fact

9

on a constitutional violation claim. However, Plaintiff alleges that the Magistrate Judge erred in applying *Strickler*, and instead should have considered *Helling*, a United States Supreme Court case which found that the risk of future injury could be enough to demonstrate constitutional harm. *Helling v. McKinney*, 509 U.S. 25, 30 (1993). In *Helling*, the health risk associated with tobacco smoke was found to be actionable, even though the harmful affects had not yet occurred. *Id.* at 33. In his objection, the Plaintiff quoted *Helling*'s holding as prohibiting prison officials from taking any action which is "deliberately indifferent to the exposure of inmates to a seriously communicable disease on the ground that the complaining inmate shows no serious current symptoms." *Id.*

Plaintiff's attempted application of *Helling* to the facts of his case is incorrect for several reasons. First, there is no evidence here that prison officials were "deliberately indifferent" to the Plaintiff's complaints. On the contrary, the Plaintiff brought the majority of these consequences upon himself through his own deviant and violent behavior. For example, Defendant Benard McKie, the warden at KCI, attested in his affidavit that inmates are only placed in cells with twenty-four hour illumination when they have demonstrated a need for close observation through antisocial or suicidal behavior. Also, McKie attested that the maximum security unit at KCI houses some of the most dangerous inmates in SCDC custody, and while efforts have been taken to reduce noise, there is no way to completely isolate inmates from noise generated when some of these dangerous inmates decide to act out and disrupt the facility. To attempt to reduce noise, prison officials have constructed the facility in an effort to minimize the ability of inmates to communicate with each other to minimize the risk of any sort of conspiratorial acts by one or more inmates. Because Plaintiff has a history of violent behavior within the SCDC, including assaults on the staff, kidnaping and rioting, his own conduct resulted in his placement in the maximum security unit. This Court

must accord SCDC officials a substantial degree of deference in matters such as safeguarding corrections officials and other inmates, and may not subject them to § 1983 liability in the absence of a clear violation of the United States Constitution.

Furthermore, the holding in *Helling* only applies to a "seriously communicable disease." Numerous studies, medical data and reports have concluded that prolonged exposure to tobacco smoke can lead to cancer and death in the future, even if such symptoms are not currently apparent. Plaintiff makes a misguided attempt to compare the effects of tobacco smoke with the effects from his alleged sleep deprivation. Plaintiff has not requested a medical examination by licensed medical personnel at the facility to determine whether any of his health problems have resulted from a lack of sleep, or if he remains at risk for further health ailments in the future. However, even if a medical professional determined that the Plaintiff was suffering from sleep deprivation, it is unlikely that the long-term effects would be as serious or as irreversible as those from tobacco smoke.

Plaintiff also relies on out-of-circuit case law to argue that the Magistrate Judge's R&R contained errors. Plaintiff uses a Fifth Circuit case to argue that exposure to constant screaming and feces-smearing by mentally ill prisoners contributes to mental health problems for other inmates. *See Gates v. Cook*, 376 F.3d 323, 338 (5th Cir. 2004). Although the Fifth Circuit held that being placed in a cell covered with filth and human waste without proper cleaning supplies constitutes cruel and unusual punishment and violates the inmate's rights, there is no evidence that the conditions at KCI even remotely resembled the situation at the Mississippi prison described in *Gates*. Plaintiff never claims that feces-smearing is an issue in this case. Also, Defendants attest that inmates who are diagnosed as mentally ill are placed in a separate facility away from the general prison population, so Plaintiff's claims of being disturbed my mentally ill inmates is factually

11

untrue.

Accordingly, because Plaintiff has not shown any sort of tangible harm from the alleged light and noise in his cell, or any effort on his part to seek any help or treatment for any sort of condition arising out of having trouble sleeping, this is not a constitutional violation and his claim for § 1983 relief on this ground fails as a matter of law.

**III.   Mold Claims**

The Magistrate Judge's R&R further recommended that the Plaintiff failed to present any evidence to substantiate his claim that excessive mold existed in the cells or hallways of the maximum security unit, or that Plaintiff suffered from any medical condition as a result of mold being present. Because Plaintiff has provided no evidence to support his claim, the Magistrate Judge found that Plaintiff cannot survive Defendants' Motion for Summary Judgment. *See Shrader v. White*, 761 F.2d 975, 984 (4th Cir. 1985). In his objection, Plaintiff claims that he personally observed mold in the facility. Plaintiff cites an unpublished case from the Tenth Circuit which found that a reasonable fact-finder could rely upon a layman's opinions to determine that defendants were aware of an excessive risk to the plaintiff's health, and that they responded unreasonably to that risk. *Blay v. Reilly*, 241 Fed.Appx. 520, 525, 2007 WL 2110798 (10th Cir. 2007).

Again, however, Plaintiff relies on out-of-circuit case law that is not binding upon this Court, and also makes a faulty factual comparison. In *Blay*, the defendants knew that the plaintiff's specific job in an enclosed and poorly ventilated room was causing him serious respiratory distress, but did nothing about it. *Id*. However, Defendants at KCI submitted evidence to show that the maximum security unit is inspected regularly for cleanliness. Moreover, Defendants also provided evidence that inmates are given cleaning products that they can use to do their own cleaning of their cells.

Unlike the plaintiff in *Blay*, who had no means of fixing the ventilation besides requesting that prison officials address the problem, Plaintiff had the tools to rid his own cell of mold if he believed the prison's regular schedule did not clean his area in a satisfactory way. Plaintiff seemingly has failed to take any sort of ownership over his own cell space inside the prison. As the Magistrate Judge stated in the R&R, "During the time period set forth in the Complaint, Plaintiff was an inmate in a correctional facility, not a hotel, and it should be expected that conditions in such a setting are oftentimes less than ideal." *Lunsford v. Bennett*, 17 F.3d 1574, 1581 (7th Cir. 1994). There is no evidence that Plaintiff ever attempted to clean any mold himself or specifically request that SCDC officials clean mold in specific portions of the hallway or his cell.

Because Plaintiff's only evidence of any mold are his own self-serving allegations, and he has provided no evidence of any harm suffered by him or any other inmate due to the mold, this Court accepts Judge Marchant's R&R as it relates to Plaintiff's mold claims and finds that this claim fails as a matter of law.

## IV. Access to Sunlight Claims

Plaintiff's objection does not identify specific failures of the Magistrate Judge's R&R as it pertains to his complaints about the lack of sunlight. Plaintiff's objection only briefly cites *Richard v. Reed*, a 1999 case where the court stated that, in extreme circumstances, a lack of sunlight for an extended period of time might amount to a sufficient constitutional violation. *Richard v. Reed*, 49 F. Supp. 2d 485, 487 (E.D. Va. 1999). However, because the Plaintiff's objection does not find specific fault with any of the Magistrate Judge's decisions on this issue, this Court is only obligated to investigate the Magistrate Judge's R&R on this issue and ensure that it is not a clearly erroneous application of the law.

In examining *Richard v. Reed* in more detail, however, a major factual difference is illuminated. In *Richard*, the plaintiff was denied access to direct sunlight for more than 100 consecutive days. Here, in contrast, Plaintiff had the option to go outside for one hour each day of recreation time. Plaintiff's cell originally contained a window which allowed sunlight into the cell, but when a previous occupant of the cell attempted to escape through the window, SCDC officials decided it was necessary to seal off the window. However, Plaintiff was given ample opportunity for exercise and sunlight, and did not face an extended lack of opportunity to enjoy sunlight.

Accordingly, this Court accepts Judge Marchant's R&R as it pertains to Plaintiff's claims regarding a lack of sunlight access and grants summary judgment to the Defendants on this issue.

## V. Claim that Defendant Brent Mills Was Wrongfully Dismissed

The Magistrate Judge's R&R dismissed Defendant Brent Mills as a party because the actions for which the Plaintiff sought liability against Defendant Mills derived from claims in Plaintiff's complaint which have already been dismissed. In his objection, Plaintiff alleges that the Magistrate Judge erroneously interpreted the Plaintiff's deliberate indifference medical claim against Defendant Mills as a claim for improper medical treatment. However, in Plaintiff's Second Cause of Action, which was previously dismissed by this Court, Plaintiff claimed that Defendant Mills provided "improper medical treatment" following an incident where Plaintiff was allegedly sprayed with pepper spray and assaulted by a corrections officer. Because Plaintiff specifically accused Defendant Mills under the more specific claim of improper medical treatment and not under the more general claim of deliberate indifference, and because the only two causes of action involving Defendant Mills have been dismissed by this Court, the Magistrate Judge was correct to recommend dismissal of Defendant Mills as a party. Furthermore, Plaintiff cites no relevant case law that would

14

serve as the basis to his objection of this portion of the Magistrate Judge's report.

Accordingly, this Court accepts Judge Marchant's R&R as pertaining to Plaintiff's claim that Defendant Mills was wrongly dismissed.

## **CONCLUSION**

It is, therefore **ORDERED**, for the foregoing reasons that Defendants' Motion for Summary Judgment be **GRANTED**, and Plaintiff's action for civil rights relief pursuant to 42 U.S.C. § 1983 against Defendants be **DISMISSED** with prejudice. It is furthered **ORDERED**, for the foregoing reasons, that Plaintiff's Motion for Summary Judgment be **DENIED**.

**AND IT IS SO ORDERED**.

_____
PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**July 23, 2009**